```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MICHIGAN
                         SOUTHERN DIVISION
```

DONALD REID,

                                  CIVIL CASE NO. 04-40216

               Plaintiff,

v.                            HONORABLE PAUL V. GADOLA

                                  U.S. DISTRICT JUDGE

THETFORD TOWNSHIP,

               Defendant.

_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the court is Defendant Thetford Township's ("Thetford") motion for summary judgment, filed on February 23, 2005. Because claim preclusion bars Reid's lawsuit, the Court will grant the motion.

**I.    FACTUAL BACKGROUND**

In July of 2003, a Thetford Township inspector issued a citation to Donald Reid of Clio, Michigan, for violation of a township ordinance. Thetford Mot., Ex. B at 5. This ordinance, in part, prohibits property owners from keeping "junk" vehicles on their property unless they are within an enclosed structure. The ordinance states: "[t]he term 'junk motor vehicles shall include without limitation, any vehicle which is not licensed for use upon the highways of the State of Michigan for a period in excess of thirty days and shall also include whether licensed or not, any

motor vehicle which is inoperative for any reason for a period in excess of thirty days.'" Thetford Mot., Ex. B at 19. The number of vehicles on Reid's property varied, but at one time he had six cars and a motor home on his property. Id. at 9. The township inspector instructed Reid to remove the "junk" vehicles from his property or move them into a structure. Id. at 10.

Reid did not comply to the satisfaction of township authorities, Thetford Mot., Ex. B at 8, 10, 17, 40. Therefore, the township sought enforcement of the citation during a trial in the 67th District Court for the County of Genesee ("the county court") before the Honorable David. J. Goggins. At the conclusion of a subsequent motion hearing, the county court entered judgment in favor of Thetford and an order instructing Reid to remove from his property all but two vehicles used for personal transportation. The order also noted that if Reid did not comply, the township could arrange for towing the "junk" vehicles at Reid's expense. Subsequently, the township did so. Thetford Mot., Ex. B at 2. There is no information to suggest that Reid appealed the first lawsuit.

In July of 2004, Reid filed a lawsuit in the Circuit Court for the County of Genesee against Thetford Township and a township supervisor, claiming the township used its enforcement activities to violate Reid's civil rights. Thetford removed the case to this Court and filed the present motion for summary judgment.

**II.  LEGAL STANDARD**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Martin v. Ohio Turnpike Comm'n, 968 F.2d 606, 608 (6th Cir. 1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party.  60 Ivy St. Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir. 1987).  The Court is not required or permitted, however, to judge the evidence or make findings of fact.  Id. at 1435-36.  The moving party has the burden of showing conclusively that no genuine issue of material fact exists.  Id. at 1435.

A fact is "material" for purposes of summary judgment if proof

3

of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties.  Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984).  A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate.  Id.; Feliciano v. City of Cleveland, 988 F.2d 649, 654 (6th Cir. 1993).

Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. Anderson, 477 U.S. at 256.  To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  As the United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50

(citations omitted); see Celotex, 477 U.S. at 322-23; Matsushita, 475 U.S. at 586-87.

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. Lucas v. Leaseway Multi Transp. Serv., Inc., 738 F. Supp. 214, 217 (E.D. Mich. 1990) (Gadola, J.), aff'd, 929 F.2d 701 (6th Cir. 1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252; see Cox v. Ky. Dep't of Transp., 53 F.3d 146, 150 (6th Cir. 1995).

**III. ANALYSIS**

    **A.   Claim Preclusion**

The threshold determination in this matter is whether claim preclusion bars Reid from pursuing his civil rights claims in this Court. When considering claim preclusion, this Court is to rely on the law of the state in which the first judgment occurred, which is Michigan in this case:

> When considering whether the judgment of a state court will have either type of preclusive effect on a subsequent action brought in federal court, the Full Faith and Credit Act, 28 U.S.C. § 1738, requires the federal court to give the prior adjudication the same preclusive effect it would have under the law of the state whose court issued the judgment.

Heyliger v. State Univ. & Cmty. Coll. Sys. Of Tenn., 126 F.3d 849, 851-52 (6th Cir. 1997).

The Sixth Circuit has noted "the perennial confusion over the vocabulary and concepts of the law of preclusion." Heyliger, 126 F.3d at 852. The Supreme Court has instructed that:

> the preclusive effects of former adjudication are discussed in varying and, at times, seemingly conflicting terminology, attributable to the evolution of preclusion concepts over the years. These effects are referred to collectively by most commentators as the doctrine of "res judicata." Res judicata is often analyzed further to consist of two preclusion concepts: "issue preclusion" and "claim preclusion." Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. This effect also is referred to as direct or collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar.

Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 77 n.1 (1984) (citations omitted) (quoted in Heyliger, 126 F.3d at 852).

Michigan law requires a court to apply claim preclusion if (1) there was a prior and final decision on the merits, (2) the parties in both lawsuits are the same, and (3) the matter in the second case was, or could have been, resolved in the first lawsuit. Adair v. State, 470 Mich. 105, 121, 680 N.W.2d 386 (Mich. 2004); and see Sewell v. Clean Cut Mgmt., Inc., 463 Mich. 569, 575, 621 N.W.2d 222 (Mich. 2001), Ditmore v. Michalik, 244 Mich. App. 569, 576, 625

N.W.2d 462 (Mich. Ct. App. 2001). The court will therefore address the three requirements.

Once the three elements are met, claim preclusion can operate in two ways. It will bar "not only claims already litigated, but every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." Sewell, 463 Mich. at 575, 621 N.W.2d 222. That latter aspect of claim preclusion also bars claims that a party could have brought as counterclaims in the first action. See e.g. Hendrix v. Roscommon Township, No. 03-CV-10047-BC, 2004 U.S. Dist. LEXIS 10377 (E.D. Mich. May 18, 2004) (plaintiffs' civil rights claim barred because they failed to bring it as a counterclaim in first action).[1]

### 1.   Prior, Final Decision on the Merits

Reid concedes that there was a prior, final decision on the merits, the first requirement of claim preclusion.[2] This Court also

---

[1] However, at least one Michigan case had the opposite holding. In Eaton County Road Commissioners v. Schultz, 205 Mich. App. 371, 376, 521 N.W.2d 847 (1994), the court held that the county's failure to counterclaim against Schultz in an earlier action did not preclude its current claim. Id. ("Causes of action and defenses are not interchangeable.") The Sixth Circuit has said this case represents a "split of authority" Pryor & Capitol Ave. Homes, Inc. v. City of Lansing, 70 Fed. Appx. 810, 814 (6th Cir. 2003), but also noted it is "the exception." Id. Also, Reid cited no relevant cases that follow Eaton County Road Commissioners.

[2] Thetford asserts that "[t]he bench verdict before Judge Goggins on December 5, 2003 was final and on its merits," Thetford Mot., at 4, ¶ 13, and Reid agreed that "[t]hese assertions are

finds that the county court's decision that Reid violated the township ordinance was a prior, final decision on the merits. That court reached its conclusion at the end of a bench trial and after a motion hearing. Thetford Mot. Ex. B at 56-59, Ex. C at 1, Ex. E, and Ex. D.

### 2. Same Parties in Both Actions

The second claim preclusion requirement is met; that is, the parties in each action are the same. In the first action in county court, Thetford Township was the plaintiff and Reid was the defendant. In this second action, their roles are reversed: Reid is now the Plaintiff, and Thetford Township is the Defendant. "The fact that parties have reversed roles in subsequent suits, in the past, has not foiled the application of res judicata." Detroit v. Nortown Theatre, Inc., 116 Mich. App. 386, 393, 323 N.W.2d 411 (1982).

Reid disputes this requirement on two grounds. First, he argues that township supervisor Harold Brady was not a party to the first action, but he is a party to this second action. Reid does not explain, however, how Brady, who died "on or about August 31, 1999," is a party to the current civil rights lawsuit, when the facts giving rise to the civil rights claims began around July of

---

procedurally correct." Reid Ans. at 5, ¶¶ 9-13.

2003, long after Brady's death. <u>See</u> Suggestion of Death Regarding Codefendant Harold Brady.

Reid's second argument is that the opposing party in the first action was the State of Michigan, not Thetford Township. Reid Ans., at 5, ¶ 14. Yet, Reid himself lists Thetford Township, not the state, as the plaintiff in his objection to entry of order in the first action. Thetford Mot., Ex. D. Also, the only documents that mention the State of Michigan are unofficial court reporter transcripts. Additionally, courts look to the substance of the parties' identity, not the technical form, and courts do not give regard to mere mistakes in naming a party. Mich. Comp. Laws. Ann. § 600.2301 (West 1963) ("The court at every stage of the action or proceeding shall disregard any error or defect in the proceedings which do not affect the substantial rights of the parties."); <u>and see</u> <u>Youngblood v. Grank Trunk W. Ry.</u>, 239 Mich. 136, 214 N.W. 154 (Mich. 1927). A cursory examination of the transcript of the trial in the first action makes clear that it was Thetford Township, and not "the State of Michigan," that brought the enforcement action against Reid.

### 3. Matter Should Have Been Brought in the First Action

The third element of claim preclusion is satisfied because Reid failed to raise and pursue his civil rights allegations as counterclaims in the first lawsuit. He should have brought them in

the first action because they arose from the same transactional set of facts as the ordinance violation.

To determine whether Reid should have brought the civil rights claims in the first action, this Court will use the "'same transaction' test," which is employed by Michigan courts. <u>Adair</u>, 470 Mich. at 124, 680 N.W.2d 386. Michigan has "a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." <u>Id.</u> at 121; <u>See also</u> <u>Gose v. Monroe Auto Equip.</u>, 409 Mich. 147, 163, 294 N.W.2d 165 (1980) ("Broad application bars as well those claims arising out of the same transaction which plaintiff could have brought, but did not. In recent opinions, we have acknowledged the conflicting language and opted for the broad rule.... we endorsed the broad rule in our most recent pronouncement.").

Because of "confusion" about the test and its meaning, the Michigan Supreme Court made clear that it "has accepted the validity of the broader transactional test in Michigan," <u>Adair</u>, 470 Mich. at 124, 680 N.W.2d 386. Elaborating on the transaction test, the court stated:

> The "transactional" test provides that "the assertion of different kinds or theories of relief still constitutes a single cause of action if a single group of operative

>facts give rise to the assertion of relief." . . . [T]he transactional approach is [] pragmatic. Under this approach, a claim is viewed in "factual terms" and considered "coterminous with the transaction, regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff; [] and regardless of the variations in the evidence needed to support the theories or rights."

Adair, 470 Mich. at 124, (quoting River Park, Inc. v. Highland Park, 184 Ill.2d 290, 307-09, 703 N.E.2d 883, (1998)) (internal citations omitted). The Adair court specifically "accepted the validity of the broader transactional test" and rejected the use of "the same evidence test," which "is tied to the theories of relief asserted by a plaintiff" and states that "a second suit is barred 'if the evidenced needed to sustain the second suit would have sustained the first, or if the same facts were essential to maintain both actions.'" Id.

The Michigan Supreme Court also provides several factors to aid the application of the same transaction test when determining if claims arose from the same set of facts: "[w]hether a factual grouping constitutes a 'transaction' for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in *time, space, origin* ... [and] whether they form a convenient trial unit"  Adair, 470 Mich. at 125, 680 N.W.2d 386 (quoting 46 Am Jur 2d, Judgments § 533, p. 801).

The claims in this case and in the first action arose from the

same factual transaction. The "single group of operative facts" that gave rise to the first action are the number of vehicles that Reid admits were located on his property, and the interaction between Reid and Township officials concerning those vehicles. Adair, 470 Mich. at 124. This interaction includes not only the enforcement of the ordinance through Inspector Ferweda's issuance of a municipal civil infraction notice of violation, and the prosecution of the notice, but also the frequent conversations between Reid and township officials. Thetford Mot., Ex. B at 5, 10-11; Thetford Br., at 5; Thetford Mot., Ex. B at 7-11, 14, 17, 20.

The "single group of operative facts" that gave rise to this second action are essentially the same, even though Reid adorns them with a different theory of relief and adds some new information. Adair, 470 Mich. at 124. Reid's new theory in this action, that the enforcement is motivated by racism, and the corresponding new type of relief he seeks, do not create a new claim either. "A comparison of the grounds asserted for relief is not a proper test" to determine if claim preclusion bars a second lawsuit. Jones v. State Farm Mut. Auto Ins. Co., 202 Mich. App. at 401, 509 N.W.2d 829. "The 'transactional' test provides that 'the assertion of different kinds or theories of relief still constitutes a single cause of action if a single group of operative facts give rise to the assertion of relief,'" Adair, 470 Mich. 105,

124, 680 N.W.2d 386. See also Askew v. Ann Arbor Public Schools, 431 Mich. 714, 730 n.7, 433 N.W.2d 800 (Mich. 1988). The few different facts Reid includes in this action, such as his race, do not create a new claim either. "The doctrine of res judicata would become meaningless if a party could continue to relitigate the same issue . . . by merely positing a few additional facts that occurred after the initial suit." Dubuc v. Green Oak Twp., 312 F.3d 736, 751 (6th Cir. 2002).

Applying the several factors that aid the application of the same transaction test, i.e., time, place, origin and the convenience of one trial unit, to the facts of this case also indicates the two lawsuits arose from the same set of facts. Overall, the facts that gave rise to both actions are related in time because they are basically the same facts, almost all of which occurred in the time period from July of 2003 to February of 2004. This factual grouping within the specified period appears to constitute a common transaction underlying both lawsuits. The facts giving rise to both actions are related in space because the disputed location is Reid's property, where the controversial vehicles were located. The facts giving rise to both actions are related in origin as well. The origin of the first action is Reid having numerous vehicles on his property, followed by township enforcement activities. The origin of the second action, as Reid

puts it in his pleadings, is the township's harassment of him for having vehicles on his property. Different theories about those cars are advanced in each action, but the origin of both actions is essentially the same set of facts: the number of vehicles on Reid's property.

Reid's civil rights allegations could have been joined as counterclaims to the ordinance violation in the first action to form a convenient trial unit, which is the last of the factors used to apply the same transaction test. The civil rights claims have significant overlap in witnesses and evidence with the ordinance violation, despite different questions of law for the two matters. See Rauch v. Sinai Hospital, No. 218576, 2001 Mich. App. LEXIS 1450, *8, *9 (Mich. App. June 15, 2001). The different focus of witness testimony or legal issues does not outweigh the common factual transaction that gave rise to both actions. Different legal issues in a second action do not necessarily mean the second action is a different claim, or arises from a different factual transaction, than the first action. See Wilkerson v. Weber, No. 00-74282, 2001 U.S. Dist. LEXIS 8982, *10-12 (E.D. Mich. May 30, 2001) (Cohn, J.) (plaintiff's civil rights claim under 42 U.S.C. § 1983 in second action barred for failure to bring it in first action with state claims under negligence and Mich. Comp. Laws § 257.632); and Wizinsky v. Wixom Meadows Inv. Ltd. P'ship, No. 248441, 2004

Mich. App. LEXIS 2497 (Mich. App. September 30, 2004).

Reid is correct in his pleadings that federal civil rights claims are very different legally than the township ordinance. Reid Resp., at 5. That does not mean they cannot be heard together in one court. Reid has offered no argument that the county court excluded, or would have excluded, consideration of those claims. Also, Michigan courts can hear federal civil rights claims. Dickerson v Warden, Marquette Prison, 99 Mich. App. 630, 634; 298 N.W.2d 841 (1980).

Overall, the Adair factors substantially weigh in favor of finding that Reid's claim in this action arose from the same factual transaction as did the ordinance violation because the facts are basically identical in place, time and origin, and because the claims would have formed a convenient trial unit.

Now that it is established that Reid's civil rights claims in this action arose from the same transaction, or "single group of operative facts" as that involved in the "junk" vehicle ordinance violation, Michigan's broad concept of claim preclusion requires this Court to apply the principle that parties must bring these claim in the first action or be barred from litigating them later. Adair, 470 Mich. at 121, 680 N.W.2d 386; Sewell, 463 Mich. 569, 575; Dart, 460 Mich. at 586, 597 N.W.2d 82; Gose, 409 Mich. 147, 163, 294 N.W.2d 165; Spraque v. Buhagiar, 213 Mich. App. 310, 313,

539 N.W.2d 587 (1995); and see Nathan v. Rowan, 651 F.2d 1223, 1228 n.8 (6th Cir. 1981) (quoting Cromwell v. County of Sac, 94 U.S. 351, (1877)) ("...the doctrine of res judicata necessarily applies to all matters, including new or different legal theories against the same parties, that 'might have been offered'").

In the first action, Reid did not raise violations of 42 U.S.C. § 1983, or 42 U.S.C. §§ 2000e et. seq., the two claims Reid is using in this action. Reid is therefore barred from litigating the civil rights claims in this action: they arose from the same transactional set of facts as the ordinance violation, yet Reid failed to raise them as a counterclaim. As the Michigan Supreme Court has stated: "[Plaintiff] was obligated to advance in a single proceeding every alternative basis which could support this claim. Failure to do so bars relitigation of the claim previously resolved against him." Gose, 409 Mich. at 163, 294 N.W.2d 165.

Having made this conclusion, the Court will now address two of Reid's more plausible arguments. First, if this Court, in the alternative, were to consider that Reid did raise the civil rights counterclaims in the first action, Reid still would be precluded from making those claims in this case. Courts are to construe the pleadings of pro se litigants, such as Reid in the first action, liberally. Martin v. Overton, 391 F.3d 710, 712 (6th Cir. 2004) (citing Haines v. Kerner, 404 U.S. 519, 520-21, (1972). Construing

Reid's pleadings in the first action accordingly, a few statements could be considered to be claims of civil rights violations: "I feel the township has been harrassing (sic) me for many years [and] for no reason at all, other than they are trying to force me to move." Thetford Mot., Ex. D, at 3. Additionally, Reid states: "I feel my civil rights are being ignored and that those in power are not looking at the evidence submitted." Id.

The Michigan claim preclusion rule requires that once a party raises or even mentions a claim, "it must be fully and finally determined." Ternes Steel Co. v. Ladney, 364 Mich. 614, 619, 111 N.W.2d 859 (Mich. 1961); and see Gross v. Landin, No. 246282, 2004 Mich. App. LEXIS 2273 , at \*19 (Mich App. August 26, 2004), Hendrix, 2004 U.S. Dist. LEXIS 10377, at \*15. Construing Reid's comments as civil rights claims, this Court finds that Reid should have ensured those claims were "fully and finally determined" in the first action as counterclaims. Ternes Steel Co., 364 Mich. 614, 619. Reid's failure to do so precludes his pursuit of those claims in this Court now.

Second, Reid argues that the township ordinance and federal civil rights claims are so legally dissimilar that the first does not bar the second. This argument relies on Tipler v. E.I. DuPont deNemours & Co., 443 F.2d 125, 129-129 (6th Cir. 1971), which Reid cites as an analogous case. In Tipler, the court found that claim

17

preclusion did not bar a second action under 42 U.S.C. §§ 2000e et seq. when the first administrative action was under the National Labor Relations Act through the National Labor Relations Board. The court reasoned that the two statutes involved significantly different legal reasoning, and employer conduct allowed under one statute might be prohibited under the other. Tipler, 443 F.2d at 128-29.

Reid's reliance on Tipler is misplaced. Tipler predates by decades Michigan's adoption in Adair of the "same transaction" test for claim preclusion. Tipler was a case from the Western District of Tennessee, Id. at 127, while this case is from the State of Michigan. The Tipler court did not state it was using Michigan law, as this court must do. Heyliger 126 F.3d at 851-52. Also, the first action in Tipler was an administrative action, whereas the first action here was judicial. Last, Reid cited no relevant cases that followed Tipler's claim preclusion analysis.

**B.   Issue Preclusion**

Given that Thetford's invocation of claim preclusion is successful against Reid, there is no need for this Court to consider issue preclusion, other than to note it is not applicable. The issues in this case, allegations of civil rights violations, were not raised in the first action (see supra), so it could not have been "actually litigated," Bowens, 364 F. Supp. 2d 641, which

is the third of issue preclusion's five requirements.

## IV. CONCLUSION

In conclusion, Reid is precluded from pursuing his claims in this Court because they arise from the same factual transaction as the claim in the first action, which achieved a final decision on the merits and involved the same parties as this case. Because the claims in both actions arose from the same factual transaction, Reid could have and should have raised the civil rights allegations as counterclaims in county court with the ordinance violation. Because Reid failed to raise the civil rights counterclaims in the first action, he is barred from raising them now. Even if he is considered to have raised those allegations, he is still barred from pursuing them in this action because he failed to litigate them fully the first time.

**ACCORDINGLY, IT IS HEREBY ORDERED** that Thetford's motion for summary judgment [docket entry 7] is **GRANTED**, and this action, No. 04-40216, is **DISMISSED WITH PREJUDICE.**

**SO ORDERED.**

Dated:   July 12, 2005           s/Paul V. Gadola
                                 HONORABLE PAUL V. GADOLA
                                 UNITED STATES DISTRICT JUDGE

Certificate of Service

I hereby certify that on   July 12, 2005  , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:
                                      David B. Landry                                    , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:     Karen McDonald Lopez                                    .

                                                         s/Ruth A. Brissaud
                                                         Ruth A. Brissaud, Case Manager
                                                         (810) 341-7845